Matthew Righetti, Esq. State Bar No. 121012
John Glugoski, Esq. State Bar No. 191551
**RIGHETTI GLUGOSKI, P.C.**
456 Montgomery Street, Suite 1400
San Francisco, CA 94101
Telephone: (415) 983-0900
Email:matt@righettilaw.com
Email: jglugoski@righettilaw.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (State Bar No. 208436)
2901 W. Coast Highway, Suite 200
Newport Beach, CA 92663
Tel. No.: (949) 270-2798
E-Mail: rnathan@nathanlawpractice.com

Attorneys for Plaintiff, RUBEN HARPER

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN HARPER, on behalf of herself and all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs | **JURY TRIAL DEMANDED** |
| GENERAL MILLS, INC; GENERAL MILLS SALES, INC.; and DOES 1 through 10, Inclusive. | |
| Defendants. | |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff, RUBEN HARPER ("Plaintiff") brings this action on behalf of herself and all others similarly situated against GENERAL MILLS, INC; GENERAL MILLS SALES, INC. ("GENERAL MILLS" or "Defendants").  Plaintiff makes the following allegations based upon information and belief, except as to the allegations specifically pertaining to himself, which is based on personal knowledge.

## INTRODUCTION

1.       GENERAL MILLS, INC; GENERAL MILLS SALES, INC. ("GENERAL MILLS") is an American multinational manufacturer and marketer of branded consumer foods, which is located in Golden Valley, Minnesota. Its brand portfolio includes more than 89 other leading U.S. brands. GENERAL MILLS employs approximately 38,000 individuals worldwide.

2.       GENERAL MILLS manufactures, distributes, and packages several brands, including, but not limited to company brands include Annie's, Blue Buffalo, Frescarini, Latina, Totino's, Jeno's, Progresso, Colombo, and Yoplait.

3.       GENERAL MILLS manufactures, distributes, advertises and sells cereal and cereal bars products with specific representations "MADE WITH REAL COCOA," "REAL COCOA," and "MADE WITH 100% REAL COCOA," or any derivative thereof. Among these GENERAL MILLS cereal products that are purportedly "MADE WITH REAL COCOA," "REAL COCOA," and "100% REAL COCOA," include the following:

   a.  Chocolate Cheerios;

   b.  Cocoa Puffs;

   c.  Chocolate Toast Crunch;

   d.  Chocolate Chex;

   e.  And any other GENERAL MILLS products that claim that they are "Made with Real Cocoa."

(collectively, referred to as the "Products").

4. Consistent with Defendant's self-promotion as a leader in cereals, the front of the packaging of the Products state in prominent, lettering that contains "MADE WITH REAL COCOA," "REAL COCOA," and "100% REAL COCOA." To reinforce the message that the Products contain 'REAL COCOA.' GENERAL MILLS uses imagery and coloring on the front packaging, including the use of smaller font for other words, "MADE WITH" and placement of the language "REAL COCOA" next to the brands' name/logo to ensure its consumers know the Products are made with "REAL COCOA." Defendant's representations that the Products are made with "REAL COCOA" are false, misleading, and deceptive. This labeling deceives consumers into believing that they are eating products with "REAL COCOA," but Defendants' Products do not live up to these claims.

5. Contrary to the labeling, however, it is alleged that each of the Products is not made with '"REAL COCOA," but instead is processed with alkali.

6. Defendant's representations are false, misleading, unfair, unlawful, and are likely to deceive members of the public, and continues to do so. Defendant's practices violate California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL"), California's False Advertising Law, and Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"). In addition, Defendant's representations also give rise to Plaintiff nationwide class claims for fraud, unjust enrichment and breach of express warranty.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Defendant. Defendant purposefully avails itself of the California consumer market and distributes the Products to hundreds of locations within this County and thousands of retail locations throughout California, where the Products are purchased by thousands of consumers every day.

2
**COMPLAINT**

8.      This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least one hundred (100) members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

9.      Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## PARTIES

10.      Plaintiff Ruben Harper is a citizen of California.  In the last approximately three (3) years, Mr. Harper made several purchases of the Products from various stores in and near San Francisco County and San Joaquin County, California.  Prior to purchasing, Mr. Harper also saw, read and relied on the representation and warranty on the front label that the Products are "MADE WITH REAL COCOA," "REAL COCOA," and "100% REAL COCOA." Mr. Harper understood these representations to mean that the Products contained no preservatives.  Mr. Harper purchased the Products at a substantial price premium, and would not have bought the product had he known that the labeling he relied on was false, misleading, deceptive and unfair.  Mr. Harper would purchase the Products again in the future if Defendant changed the composition of the Products so that they conformed to their labeling and marketing.

11.      Defendant GENERAL MILLS, INC; GENERAL MILLS SALES, INC. ("GENERAL MILLS" or "Defendants") are corporations and limited liability

company organized under the laws of Delaware with its headquarters and principal place of business at Minneapolis, MN.  Defendant produces, markets and distributes a variety of brands across the United States. Defendants knew that the labeling of the Products is false and misleading to a reasonable consumer, because the Products are not made with "REAL COCOA" and instead are processed with alkali.

12.    Does 1 through 10 are fictitious names.  That the true names and capacities, whether individual, corporate, associate or otherwise of each of the Defendants designated herein as a DOE are unknown to Plaintiffs at this time, who therefore, sue said Defendants by fictitious names, and will ask leave of this Court for permission to amend this Complaint to show their names and capacities when the same have been ascertained.  Plaintiffs are informed and believe and thereon allege that each of the Defendants designated as a DOE is legally responsible in some manner for the events and happenings herein referred to, and caused injuries and damages thereby to these Plaintiffs as alleged herein.

## **FACTUAL ALLEGATIONS**

13.    According to GENERAL MILLS, it sells the cereals and cereal bars throughout the United States. The front label of the Products states, "MADE WITH REAL COCOA," "REAL COCOA," and "100% REAL COCOA." to Merriam-Webster, the "real" is defined as not artificial, fraudulent, or illusory[1].  The claim of "MADE WITH REAL COCOA," "REAL COCOA," and "100% REAL COCOA" is intended to differentiate the cocoa in the Products from other cocoa that has been processed such as cocoa powder "processed with alkali." Examples of Defendants representations on the front label of their packaging set forth below:

---

[1] https://www.merriam-webster.com/dictionary/real

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28






14.     Cocoa powder is an unsweetened powder produced by grinding the seeds of the fruit of a tropical evergreen tree called the cacao, or cocoa tree[2]. The cacao tree produces fruit, which contains a cocoa pod.  Each cocoa pod contains approximately 30-50 beans.  The beans are removed from the pod, fermented, and dried.  The cocoa beans are cracked and the shells are separated from nibs. The nibs are roasted to a rich brown color and ground into chocolate liquid called cocoa liquor.  The liquid solidifies after cooling and cocoa butter is extracted.  The solid blocks that remain are pressed to produce cocoa powder. Natural cocoa powder is astringent, by its bitter taste and has a light brown color.

15.     The health benefits associated with cocoa is widely accepted[3]. Natural cocoa powder's health benefits include a high amount of flavanols and fiber.  Cocoa is a food ingredient that is important for the contribution of flavor to foods and it clearly has associated with health benefits. Flavanol (flavan-3-ol) antioxidants[4] are responsible for cardiovascular health benefits. It is a well-known fact that natural cocoas are high in flavanols. Flavonoids are a class of antioxidants that are abundant in both cacao and cocoa powder. Flavonoids inhibit pro-inflammatory enzymes in the body, meaning that they have a widespread anti-inflammatory effect. Additionally, flavonoids have been associated with higher levels of "healthy" HDL cholesterol and better overall cardiovascular health. In a study, the results showed that natural cocoas tend to group with the highest total flavanols ranging from 22.86 to 40.25 mg/g. The

---

[2] https://www.thespruceeats.com/what-is-cocoa-powder-520351

[3] Cocoa and dark chocolate increasingly have been associated with cardiovascular health benefits. These include increasing vasodilation (*12*) and coronary arterial output (*13*) as well as decreasing blood pressure (*14, 15*) and platelet aggregation (*16*). These combined effects, along with epidemiological studies that show lowering of blood pressure (*17*) and decreases in mortality due to cardiovascular disease (*17, 18*), suggest that cocoa powder and dark chocolate are associated with heart and circulatory benefits. These benefits are thought to be conferred, in part, by the flavanol antioxidants found in cocoa. Impact of Alkalization on the Antioxidant and Flavanol Content of Commercial Cocoa Powders, Kenneth B. Miller, at al. J. Agric. Food Chem. 2008, 56, 8527–8533 8527 .

[4] Gu, L.; House, S. S.; Wu, X.; Ou, B.; Prior, R. L. Procyanidin and catechin contents and antioxidant capacity of cocoa and chocolate product. *J. Agric. Food Chem.* 2006, *54*, 4057–4061.

lightly alkali processed cocoa powders ranged from 8.76 to 24.65 mg/g total flavanols, the medium alkali treated powders from 3.93 to 14.00 mg/g, and the heavily alkali treated powders from 1.33 to 6.05 mg/g total flavanols. The natural cocoas showed the highest levels of ORAC and TP. Both antioxidant capacity and TP were highly negatively correlated with pH[5].  Natural (nonalkalized powders) have the highest ORAC, total polyphenols ("TP")[6] and flavanols (including procyanidins). When cocoa is processed with alkali, also known as Dutch processing or Dutching, the flavanols and TP's are substantially reduced.[7]

16.    A study conducted by Label Insight surveyed more than 1,500 consumers to determine what they expect from brands when it comes to product information. The survey results indicate that the vast majority of consumers value product transparency and consider a wide array of information about a particular product before making purchase decisions. Sixty-seven percent (67%) of consumers believe it is the brand or manufacturer responsibility to provide them with complete product information. Consumers expect brands to provide complete and accurate information about the product. Ninety-four percent (94%) of consumers say that they want manufacturers to be transparent about the actual ingredients in food and how it is made. The study found that consumers lack access to the complete set of information they're looking for in order to make informed purchase decisions when shopping for groceries. Even when the information is provided, they don't fully understand what it means due to inconsistency, information overload and misinformation[8].

---

[5] https://life-enhancement.com/pages/effect-of-treating-cocoa-with-alkali-the-dutching-process

[6] Singleton, V.; Rossi J. Colorimetry of total polyphenols with phosphomolybdic-phosphotungstic scoid reagents. *Am. J. Enol. Vitic.* 1965, 16, 144-58.

[7] Gu, L.; Kelm, M.; Hammerstone, J. F.; Beecher, G.; Cunningham, D.; Vannozzi, D.; Prior, R. Fractionation of polymeric procyandins from low-bush blueberry and quantification of procyandins in selected foods with an optimized normal phase HPLC-MS fluorescence detection method. *J. Agric. Food Chem.* 2002, *50*, 4852–4860; Kolbe, F. X. A study of natural and alkali process cocoa powders *Manuf. Confect.* 1964, May, 31-34.

[8] https://www.labelinsight.com/hubfs/Label_Insight-Food-Revolution-Study.pdf?hsCtaTracking=fc71fa82-7e0b-4b05-b2b4-de1ade992d33%7C95a8befc-d0cc-4b8b-8102-529d937eb427

17.     Defendants' representations "MADE WITH REAL COCOA," "REAL COCOA," and "100% REAL COCOA" is false, misleading and deceptive to consumers.  Defendants' representations are misleading because the front-label claims[9] the Products contain "REAL COCOA" representing to consumers that the 'cocoa' in the Products are in an unadulterated, non-artificial form. In the United States, food-labeling regulations require that alkalized cocoa powder or liquor must be declared as 'cocoa (liquor) treated with alkali' or 'cocoa processed with alkali.[10]'  The two basic types of cocoa powder are natural process and the Dutch (or alkalized) process, which manufacturers label in one of these two formats.  Pure ground cocoa powder has a pH level between 5.3 and 5.8, which is to say that it is acidic and it is perfectly edible.  However, the acidity does have an impact by affecting its flavor, the way it interacts with other ingredients and how soluble it is. The Dutch process (sometimes called "Dutching") is a technique that washes the cocoa beans in an alkaline solution (prior to roasting or grounding), which produces a cocoa powder that is not only darker brown, but less acidic, with a pH of between 6.8 and 8.1 (chemically neutral).  Under this process cocoa powder dissolves more easily, which making it easier to disperse when work with in recipes for products such as the Oreo Products.  One problem is that it detracts from the non-artificial coca taste providing for a milder flavor.  The treatment of cocoa with alkali has a detrimental impact by reducing flavanols, which is approximately 40% of the natural level of flavanols is retained on average for lightly Dutched powders and an average of about 22% is retained in

---

[9] NMI highlighted consumers' attitudes and behaviors toward a wide array of issues related to trends in foods and beverage usage. These insights, gleaned from an annual, nationally representative sample of more than 3,000 adults, provided an understanding of the attitudes, motivations and behaviors. The survey revealed that transparency in labeling is equally or more important than the contents themselves. Consumers increasingly monitor their food labels and base purchase decisions on them. More than three-quarters of consumers report package labels influence their purchases. https://www.nmisolutions.com/research-reports/health-a-wellness-reports/17th-annual-consumer-report-2016-health-and-wellness-trends-in-america

[10] 21 C.F.R. 163.112 (Code of Federal Regulations); Kolbe, F. X. A study of natural and alkali process cocoa powders *Manuf. Confect.* 1964, May, 31-34.

medium alkali treated powders. Alkali treatment substantially reduces the level of flavanols in cocoa powders, negatively impacts the health benefits, which represents an important processing step during which losses can occur."[11]

18.     Defendants misrepresentations are further enunciated by the fact, it ensures that consumers focus on the "REAL COCOA," which is contained in larger font than the "MADE WITH" representations.  Additionally, the "MADE WITH REAL COCOA" is intended to stand out since the representations are set forth directly below the Products' name/logo. Consumers have certain expectations based on experience when it comes to how "cocoa" is declared on a label, because cocoa is a commonly used and valued product.

19.     No reasonable consumer would expect the cocoa in the Products to have been processed with alkalis, because "real" represents the cocoa powder is included in its most unadulterated, non-artificial form[12].

20.     It is false, deceptive and misleading to conspicuously promote "real cocoa" without any reference to the presence and use of alkalis either preceding or following because "real cocoa" without any modifying terms implies the absence of artificial ingredients in the cocoa.

21.     By representing that the Products have no preservatives Defendant has taken advantage of consumers' preference for healthier foods with no preservatives. Consumers pay more for these foods, because of the perceived higher quality, health, and benefits associated with preservative-free foods.

22.     Plaintiff and the Class Members reasonably relied on Defendant's false and/or misleading representations that the Products contain no preservatives.  Plaintiff

---

[11] Miller et al., Impact of alkalization on the antioxidant and the flavanol content of commercial cocoa powders. J Argic Food Chem 56:8527-33 (2008).

[12] A majority of consumers "say that when it comes to ingredient trends, a back-to-basics mind-set, focused on simple ingredients and fewer artificial or processed foods, is a priority." Neilsen Marketing Research, Reaching for Real Ingredients: Avoiding the Artificial, Nielsen, CPG, FMCG & Retail, Sept. 6, 2016
https://nielsen.com/us/en/insights/news/2016/reaching-for-real-ingredients-avoiding-the-artificial.html

and Class Members did not know and had no reason to know, that the Products were misbranded, false, and misleading and would not have bought the Products had they known the truth about them.  Defendant's representations that Products contains no preservatives is material to a reasonable consumer, including Plaintiff and Class Members when deciding to purchase it and in fact was material to the purchase of the Products.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Products during the class period (the "Class").  Excluded from the Class is Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

24.     Plaintiff also seeks to represent a Subclass of all persons in California who purchased the Products during the class period (the "California Subclass"). Excluded from the California Subclass are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

25.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

        a.     whether Defendant misrepresented material facts concerning the Products on the label of every product;

        b.     whether Defendant's conduct was unfair and/or deceptive;

        c.     whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits

conferred upon them by Plaintiff and the Class and

California Sub-Class;

d.    whether Defendant breached express warranties to Plaintiff and the

classes;

e.    whether Plaintiff and the classes have sustained damages

with respect to the common-law claims asserted, and if so,

the proper measure of their damages.

26.    Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the classes, purchased Defendant's Products bearing the "MADE WITH REAL COCOA," "REAL COCOA," and "100% REAL COCOA" representations and Plaintiff sustained damages from Defendant's wrongful conduct.

27.    Plaintiff will fairly and adequately protect the interests of the classes and have retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the classes.

28.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

29.    The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

30.    The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

# COUNT I
## Violation Of California's Consumers Legal Remedies Act ("CLRA"),
### California Civil Code §§ 1750, *et seq.*
### (*Injunctive Relief Only*)

31.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

32.     Plaintiff Harper brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

33.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ I750-I785 (the "CLRA").

34.     Plaintiff Harper and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

35.     Plaintiff Harper, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

36.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

37.     As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff Harper and the other members of the California Subclass that the Products contain no preservatives when in fact they are made with preservatives.

38.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7) and (a)(9).

39.     On May 22, 2019, Plaintiff Harper mailed a notice letter to Defendant consistent with California Civil Code § 1782(a).  The letter was sent on behalf of Harper and all other persons similarly situated.

40.     Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff Harper, on behalf of herself and all other members of the California Subclass, seeks injunctive relief due to Defendant's acts and practices.

## COUNT II

### Violation Of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*

41.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

42.     Plaintiff Harper brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

43.     Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …." Defendant violates statutes enacted in California and in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade and business practices, and false advertising.  These statutes include:

a) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, et seq.;

b) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, et        seq.;

c) Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, et seq.;

d) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et seq.;

e) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 -1-101, et seq.;

f) Wyoming Consumer Protection Act, Wyoming Stat. Ann. §40-12-101, et seq.

g) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, et seq.;

h) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, et seq.;

i) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, et seq.;

j) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201, et seq.;

k) Georgia Fair Business Practices Act, § 10-1-390 et seq.;

l) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et seq.,

and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1,et seq.;

m) Idaho Consumer Protection Act, Idaho Code § 48-601, et seq.;

n) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, et seq.;

o) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, et seq.;

p) Iowa Consumer Fraud Act, Iowa Code § 714.16, et seq.;

q) Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, et seq.;

r) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, et seq., and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, et seq.;

s) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §51:1401, et seq.;

t) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, et seq., and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, et seq.;

u) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, et seq.;

v) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

w) Michigan Consumer Protection Act, § 445.901, et seq.;

x) Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, et seq., and       Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, et seq.;

y) Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, et seq.;

z) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, et seq.;

aa) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, et seq.;

bb) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, et seq., and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, et seq.;

cc) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, et seq.;

dd) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, et seq.;

ee) New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, et seq.;

ff) New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1,et seq.;

gg) New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, et seq.;

hh) North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, et seq.;

ii) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §75-1, et seq.;

jj) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01. et seq.;

kk) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, et seq.;

ll) Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, et seq.;

mm) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. §201-1, et seq.;

nn) Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1, et seq.;

oo) South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, et seq.;

pp) South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37 24 1, et seq.;

qq) Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, et seq.;

rr) Texas Stat. Ann. § 17.41, et seq., Texas Deceptive Trade Practices Act;

ss) Utah Unfair Practices Act, Utah Code Ann. § 13-5-1,et seq.;

tt) Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, et seq.;

uu) Virginia Consumer Protection Act, Virginia Code Ann. §59.1-196, et seq.;

vv) Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, et seq.;

ww)West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, et seq.;

xx) Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100. 18, et seq.;

44.    Defendant violated the "unlawful" prong of the UCL by violating the CLRA, FAL, and the corresponding consumer protection statutes listed in the preceding paragraphs, as alleged herein.

45.    Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious

to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

46.    Defendant violated the "fraudulent" prong of the UCL by misrepresenting that the Products are "MADE WITH REAL COCOA," "REAL COCOA," and "100% REAL COCOA" when, in fact, they are processed with alkali.

47.    Plaintiff Harper and the California Subclass lost money or property as a result of Defendant's UCL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products' cocoa were processed with alkali (b) they paid a substantial price premium compared to other food products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

## COUNT III
### Violation Of California's False Advertising Law ("FAL"),
### California Business & Professions Code §§ 17500, *et seq.*

48.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

49.    Plaintiff Harper brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

50.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

51.    Defendant committed acts of false advertising, as defined by §§17500, *et seq.*, by misrepresenting that the Products are "ALWAYS MADE WITH REAL COCOA" and "REAL COCOA," when they in fact the cocoa is processed with alkali.

52.     Defendant knew or should have known through the exercise of reasonable care that their representations about the Products were untrue and misleading.

53.     Defendant's actions in violation of §§ 17500, *et seq.* were false and misleading such that the general public is and was likely to be deceived.  Plaintiff Harper and the California Subclass lost money or property as a result of Defendant's FAL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products cocoa were processed with alkali; (b) they paid a substantial price premium compared food products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

## COUNT IV

### Breach of Express Warranty

54.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

55.     Plaintiff brings this claim individually and on behalf of the proposed Class, and California Subclass against Defendant.

56.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products "MADE WITH REAL COCOA," "REAL COCOA," and "100% REAL COCOA" and the cocoa is not processed with alkali.

57.     Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and the Class regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

58.     The Products do not conform to the express warranty because the cocoa is processed with alkali.

59.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class Members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' ingredients; (b) they paid a substantial price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits as promised because the cocoa is processed with alkali.

<u>**COUNT V**</u>

**Unjust Enrichment**

60.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

61.     Plaintiff brings this claim individually and on behalf of the proposed Class, and California Subclass against Defendant.

62.     Plaintiff and Class Members conferred benefits on Defendant by purchasing the Products.

63.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products.  Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiff and members of the classes because they would not have purchased the Products if the true facts had been known.

64.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class Members for their unjust enrichment, as ordered by the Court.

<u>**COUNT VI**</u>

**Fraud**

65.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

66.     Plaintiff brings this claim individually and on behalf of the proposed Class, and California Subclass against Defendant.

67.     As discussed above, Defendant provided Plaintiff and Class Members with false or misleading material information about the Products by representing that "MADE WITH REAL COCOA," "REAL COCOA," and "100% REAL COCOA." Defendant made that misrepresentation knowing it was false because the cocoa is processed with alkali.

68.     Defendant's misrepresentations, upon which Plaintiff and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class Members to purchase the Products.

69.     Defendant's fraudulent actions harmed Plaintiff and Class Members, who are entitled to damages and other legal and equitable relief as a result.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of themselves and members of the Class, and California Subclass, as follows:

A.      For an order certifying the nationwide Class, and California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as Class and Subclass representatives; and naming Plaintiff's attorneys as Class Counsel representing the Class and Sub-Class Members;

B.      For an order finding in favor of Plaintiff, the nationwide Class, and the California Subclass on all counts asserted herein;

C.      For an order awarding statutory, compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

D.      For injunctive relief enjoining the illegal acts detailed herein;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief; and

G.     For an order awarding Plaintiff her reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: May 23, 2019                         Respectfully submitted,


**NATHAN & ASSOCIATES, APC.**


By:_____*/s/ Matthew Righetti*_____
                    Matthew Righetti

Matthew Righetti, Esq. State Bar No. 121012
John Glugoski, Esq. State Bar No. 191551
**RIGHETTI GLUGOSKI, P.C.**
456 Montgomery Street, Suite 1400
San Francisco, CA 94101
Telephone: (415) 983-0900
Facsimile: (415) 397-9005
Email: matt@righettilaw.com
Email: jglugoski@righettilaw.com


**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (State Bar No. 208436)
2901 W. Coast Highway, Suite 200
Newport Beach, CA 92663
Tel. No.: (949) 270-2798
Fax No.: (949) 209-0303
E-Mail: rnathan@nathanlawpractice.com